

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT W. MAUTHE, M.D., P.C.,** a Pennsylvania corporation, individually and as the representative of a class of similarly-situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>**GAITHER TECHNOLOGIES STC, LLC, and MINGLE ANALYTICS, INC.,**<br><br>    Defendants. | Civil Action No. *17-2154* |

## CLASS ACTION COMPLAINT

Plaintiff, Robert W. Mauthe, M.D., P.C. ("Mauthe" or "Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendants Gaither Technologies STC, LLC ("Gaither") and Mingle Analytics, Inc. ("Mingle"), (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.    Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.    Defendants sent Plaintiff at least one advertisement by facsimile and

in violation of the TCPA. Exhibit A. Plaintiff did not expressly consent to receive Defendants' advertisement by fax and does not have an established business relationship with Defendants.

3.    Plaintiff brings this action against Defendants on behalf of a class of all persons or entities that Defendants sent one or more telephone facsimile messages ("faxes") about Merit-based Incentive Payment System ("MIPS") Physician Quarterly Reporting System ("PQRS") Payment Adjustment training and review services available from Gaither and Mingle, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Defendants' violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.    Defendants' unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. The recipient of a "junk" fax loses the use of its fax machine, and many lose their paper and ink toner in printing the fax. Such an unsolicited fax interrupts the recipient's privacy. A junk fax wastes the recipient's valuable time that would have been spent on something else.

5.    Defendant Gaither is in the business of providing consulting services

2

and software applications, including programs for electronic medical records, quality measure data submission, and medical billing, to medical practices.

6.     Defendant Mingle is in the business of providing consulting services and software applications, including programs for electronic medical records, quality measure data submission, and medical billing, to medical practices. Defendant Mingle has been approved by the Centers for Medicare & Medicaid Services ("CMS") as a MIPS Qualified Registry Vendor.

7.     The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement...." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." Id., § 227 (a)(5) (emphasis added).

8.     Defendants' advertisement promotes the quality and availability of Gaither's and Mingle's Medicare program training and submission services. Exhibit A.

## PARTIES, JURISDICTION, AND VENUE

9.     Plaintiff, Robert W. Mauthe, M.D., P.C., is a private medical practice in Center Valley, Pennsylvania.

10.     On information and belief, Gaither Technologies STC, LLC is an Indiana limited liability company with its principal place of business in Evansville,

Indiana.

11.    On information and belief, Mingle Analytics, Inc. is a Maine corporation with its principal place of business in South Paris, Maine.

12.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

13.    Personal jurisdiction exists over Defendants in Pennsylvania because Defendants have transacted business and committed tortious acts within the State.

14.    Venue is proper in the Eastern District of Pennsylvania, because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

15.    Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendants are directly liable for violating the TCPA.

16.    Plaintiff has received at least one of Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on January 17, 2017 is attached as Exhibit A.

17.    Exhibit A is a one-page document Defendants sent by fax promoting Defendants' Medicare and CMS training programs and submission services. Defendants' fax promotes the quality and benefits of Defendants' services by telling recipients to "contact our knowledgeable MIPS reporting experts for an

4

implementation plan that works for your practice!" Exhibit A. The fax also implies that fax recipients "risk losing tens of thousands of dollars" without Defendants' MIPS implementation services. Exhibit A.

18.     Exhibit A promotes Mingle's CMS-Qualified PQRS Registry for "the low price of only $274 per provider." Exhibit A. Defendants' fax promotes the quality and benefits of Defendants' services by stating that Mingle's services have "over 99% successful submissions."

19.     Exhibit A contains Gaither's name, website, email address, and telephone number, all of which are methods to contact Gaither to order Defendants' services.

20.     Exhibit A establishes that recipients can order Mingle's services through Gaither using coupon code "GAITHERPQRS2016."

21.     Exhibit A advertises the commercial availability and quality of Gaither's and Mingle's property, goods, or services.

22.     Exhibit A does not include the mandatory opt-out notice required by the TCPA. See 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

23.     On information and belief, Defendants sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

24.     Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical

5

needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person that was sent one or more telephone facsimile messages ("faxes") offering Medicare program training, implementation, or submission services available through www.gaithertech.com.

Plaintiff reserves the right to modify the proposed class definition or propose subclasses after discovery about Defendants' fax advertising program and will do so through a motion for class certification pursuant to Fed. R. Civ. P. 23.

26.    Excluded from the class are Defendants, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, any entity in which any Defendant has a controlling interest, any parent, subsidiary or affiliated company of either Defendant, and any Judge assigned to this action, including his or her immediate family.

27.    In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendants sent to Plaintiff by fax, as well as all advertisements Defendants sent to the other class members.

28.    On information and belief, Defendants' fax advertising program involved other, substantially-similar advertisements sent to increase purchases from Defendant Gaither's website, www.gaithertech.com. Plaintiff intends to locate those advertisements in discovery. Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

6

29.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

30.     **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendants' records or the records of third parties.

31.     **Commonality and predominance.** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.     Whether <u>Exhibit A</u> and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants advertised the commercial availability or quality of property, goods or services;

7

b. Whether Defendant sent advertisements by facsimile promoting the commercial availability or quality of property, goods, or services;

c. The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which fax advertisements were sent;

d. Whether Plaintiff and the other class members should be awarded statutory damages;

e. If the Court finds that Defendants willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

f. Whether the Court should enjoin either or both Defendants from faxing advertisements in the future; and

g. Whether Defendants' conduct as alleged herein constituted conversion.

32. **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class were sent Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

33. **Adequacy of representation.** Plaintiff is an adequate representative of

8

the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained undersigned counsel, who are competent and experienced in complex class action litigation, and in TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

34.     **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if either or both Defendants choose to advertise by fax again in the future.

35.     **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance

9

as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

36.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

37.    Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendants.

38.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227 (b) (1).

39.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

40.    The TCPA provides a private right of action as follows:

> 3.    <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever

10

is greater, or

        (C)     Both such actions.

47 U.S.C. § 227 (b) (3).

41.    The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

42.    The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

43.    The TCPA expressly mandates the form and content of an opt-out notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

> In implementing the requirements of this subsection, the Commission ...
>
> (D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if...
>
> (i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;
>
> (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;
>
> (iii) the notice sets forth the requirements for a request under subparagraph (E);
>
> (iv) the notice includes—
>
> > (I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

(i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

(iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

44.    The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) expressly

require the following:

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

(A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

...

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

45.     Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as <u>Exhibit A</u>) to Plaintiff and the other class members without their prior express invitation or permission.

46.     Furthermore, Defendants violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice. <u>Exhibit A</u>.

47.     <u>Exhibit A</u> does not state that Defendants' failure to comply with an opt-out request within 30 days is unlawful.

48.     <u>Exhibit A</u> does not inform the recipient that he/she/it has a legal right to request that Defendants not send any future fax.

49.     <u>Exhibit A</u> does not inform the recipient that he/she/it must identify the telephone number to which the opt-out request relates. Some persons have multiple fax numbers.

50.     <u>Exhibit A</u> does not inform the recipient that the opt-out request will be valid only unless and until the person making the request has provided, subsequent to the request, express invitation or permission to the sender, in writing or otherwise, to send such advertisement to such person at such telephone facsimile machine.

51.     Because Defendants will not be able to prove that it obtained Plaintiff's prior express invitation or permission before sending an advertisement by fax, and

14

because Defendant will not be able to prove its fax contained a compliant opt-out notice, Defendant will not be able to prove any defense against Plaintiff's TCPA claim.

52.    Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

53.    The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if Defendants' actions were negligent. 47 U.S.C. § 227 (b) (3).

54.    Even if Defendants did not intend to injure Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

55.    If Defendants' actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to 3 times the amount. 47 U.S.C. § 227 (b) (3).

56.    Defendant Gaither is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, or the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and

15

ratification.

57.    Defendant Mingle is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, or the faxes were sent on its behalf, its products or services were promoted by the fax, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

58.    Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Defendants used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time; time that otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award $500.00 in statutory damages for each of

16

Defendants' violations of the TCPA;

C.     That, if it finds Defendants willfully or knowingly violated the TCPA, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

59.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60.     Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendants.

61.     By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as they did with the valuable time of the other class members.

62.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to

17

possession of their fax machines, paper, toner, and employee time.

63.     By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

64.     Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

65.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

66.     Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages;

18

D.      That the Court award attorney's fees;

E.      That the Court award costs of suit; and

F.      That the Court award such further relief as it may deem just and

proper under the circumstances.

Respectfully submitted,

Robert W. Mauthe, M.D., P.C., a Pennsylvania
corporation, individually and as the representative of a
class of similarly-situated persons

By: /s/ Richard Shenkan
One of its attorneys

Richard Shenkan (PA 79800)
Shenkan Injury Lawyers, LLC
P.O. Box 7255
New Castle, PA 16107
(248) 562-1320
(888) 769-1774 (fax)
rshenkan@shenkanlaw.com

Phillip A. Bock (*pro hac vice* admission to be requested)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
(312) 658-5500
(312) 658-5555 (fax)
phil@classlawyers.com